UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vincent L. Goodwill,

     Plaintiff,

v.                                                             Case No. 10-14200

Saks Fifth Avenue,                                  Honorable Sean F. Cox

     Defendant.

_____/

OPINION & ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     In this action, Plaintiff Vincent L. Goodwill ("Plaintiff" or "Goodwill") asserts race

discrimination and retaliation claims against Defendant Saks Fifth Avenue.  The matter is before

the Court on Defendant's Motion for Summary Judgment.  The parties have fully briefed the

issues and the Court heard oral argument on March 29, 2012.  For the reasons set forth below,

the Court shall GRANT IN PART AND DENY IN PART Defendant's Motion for Summary

Judgment.  The Court shall GRANT the motion with respect to Plaintiff's retaliation claim and

shall DENY the motion with respect to Plaintiff's race discrimination claims.

BACKGROUND

     Plaintiff filed this action against Defendant Saks Fifth Avenue ("Defendant" or "Saks")

on October 20, 2010.  Plaintiff's Complaint asserts two counts:   1) a "Claim for Racial

Discrimination Under Title VII" (Count I); and 2) a "Claim for Retaliation Under Title VII"

(Count II).

     Count I alleges that Plaintiff applied for employment as a tailor with Saks in July and

October of 2007.  It alleges that his applications for employment as a tailor with Saks were rejected and the positions were awarded to applicants who were not African-American and that race was a factor in the decision not to hire him.

Count II alleges that Plaintiff applied for employment as a tailor with Saks in July and October of 2007, and that his applications were rejected and the positions were awarded to applicants who had not engaged in protected activity by filing a charge of discrimination against Saks.  It alleges that Plaintiff's protected activity was a factor in the decision not to hire him.

Following the close of discovery, Defendant filed the instant Motion for Summary Judgment.  (Docket Entry No. 12).  This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

Both parties complied with the Court's practice guidelines for motions for summary judgment such that: 1) along with Defendant's Motion for Summary Judgment, Defendant filed a "Statement of Material Facts Not In Dispute" ("Def.'s Stmt.") and 2) along with Plaintiff's Response, Plaintiff filed his "Counter Statement of Disputed Facts" (Pl.'s Stmt.").

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties, taken in the light most favorable to Plaintiff.

The Defendant in this case is Saks Fifth Avenue. Saks Incorporated, which is not a party to this case, owns Defendant Saks Fifth Avenue. (Lofton Dep. at 83). From October 11, 1996, until March 6, 2006, Saks Incorporated also owned the Parisian Group, including the Parisian Department Stores. (Ex. B to Pl.'s Br. at ¶ 9).

Plaintiff is African-American. Plaintiff was employed as a tailor at the Parisian department store in the Laurel Park Mall in Livonia, Michigan from 1994 through March 2009. (Pl.'s Dep. at 7-9).

Plaintiff states that he unsuccessfully applied for employment at Saks's Troy, Michigan store four times between 1998 and 2003. (Ex A to Pl.'s Br. at 14). He states that he sought a tailor position in 1998 and 2000. He states that he sought a position in the Custom Suit Department in 2002 and that he sought the position of Alterations Manager in 2003. (*Id*.).

Plaintiff also testified that he made several verbal inquiries regarding obtaining a position at Saks's Troy store. Defendant acknowledges that its Human Resources Department was aware that Plaintiff wished to obtain a job at Saks's Troy store. (Lang Dep. at 58). The Human Resources Department at Parisian also advised Saks's Human Resources Department that Plaintiff was interested in working at Saks's Troy store. (*See* Ex. J to Pl.'s Br.).

Donna Willis ("Willis"), who is also African-American, was Plaintiff's immediate supervisor at Parisian from 1996 until July 2003. (Pl.'s Stmt. at ¶ 2). While supervising Plaintiff, Willis gave Plaintiff mixed reviews. That is, her reviews of Plaintiff contain many positive comments and evaluations of Plaintiff's work but also contain some negative comments

about Plaintiff.[1]

Willis ceased being Plaintiff's supervisor at Parisian in July, 2003, when she left Parisian to become the Alterations Manager at Saks's Troy store. (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4). Scott Lofton ("Lofton"), who was the Assistant General Manager of Saks's Troy store, hired Willis for that position. (Lofton Dep. at 75-76 & 144-45).

Plaintiff's personnel file at Parisian contains a January 8, 2004 e-mail from Parisian Humans Resources ("HR") representative Susan Richardson ("Richardson") to Saks's HR Director Sue Lang ("Lang") that states "Sue, Vincent would like to interview for your FT spot. When would be good days for you?" (Ex. J to Pl.'s Br. at 6). Sue Lang responded, that same day, stating:

> I spoke to Donna Willis. She is looking for a full time womens alterations candidate who can help do mens alterations when we get backed up. She felt that Vincent's experience is mostly Mens. If we had a full time men's position, she would like to talk to him.

(*Id*.; *see also* Lang Dep. at 68). At this time, Willis was the Alterations Manager at Saks's Troy store.

Willis managed the Alterations Department at Saks's Troy store from July 2003, until January 2005. (Def.'s Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6). Willis left that position to take a position at Saks's Chevy Chase, Maryland Store. (Willis Dep. at 29-30).

Plaintiff applied for the Alterations Manager position at Saks's Troy store which opened up when Willis left in 2005. (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8). Lofton interviewed Plaintiff

---

[1]The Court need not discuss in detail the statements in these reviews that Plaintiff received at Parisian because Plaintiff is not asserting any claims against Parisian and Defendant Saks did not have these reviews or base its decisions on these reviews.

for that position. (Lofton Dep. at 74).

Lofton was aware that Plaintiff was employed at Parisian when he applied for the position of Alterations Manager at Saks's Troy store. At that time, Saks and Parisian were both owned by the same company. Lofton testified that after interviewing Plaintiff, he contacted Willis to inquire about Plaintiff. (Lofton Dep. at 88). Lofton testified that while he "can't recall the exact communication" with Willis, the "gist of it was, you know, he was average at best and not a good fit for our room, wouldn't be a good employee to hire. I think it boiled down to would you hire him and she said no." (Lofton Dep. at 84). Lofton testified that he gave weight to the recommendation Willis made as to Plaintiff because Willis had worked for him and he respected her work and her opinion. (Lofton Dep. at 145).

Lofton made the decision not to hire Plaintiff for the position. (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8). Lofton hired James Fish, a white male, who was the current Alterations Manager at Saks's Cincinnati, Ohio store. (Lofton Dep. at 90-92). Lofton testified that primary reason that he decided not to hire Plaintiff was the negative reference that Willis had provided. (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4).

During her deposition, Willis testified that she had a conversation with Lofton about Plaintiff. (Def.'s Stmt. at ¶ 11; Pl.'s Stmt. at ¶11). Willis testified that while she did not get into specific details with Lofton, she did not recommend Plaintiff to Lofton. She testified that her primary reason for not recommending Plaintiff to Lofton was Plaintiff's "behavior and attitude issues." (Willis Dep. at 31-32). Willis further testified:

> Q.  When you were working as a – as the alterations manager at the Saks Troy store, if Mr. Goodwill had wanted to come to your store to work, would you have recommended hiring him for your department?
> MR. RUYNAN:       Objection, speculation.

THE WITNESS:    No.
BY MR. RICH:
Q.    And the reason why not?
A.    All the same – based on my past experience working with him, no.

(Willis Dep. at 32).

Plaintiff filed an EEOC Charge of Discrimination against Saks on February 16, 2006, alleging that he had been discriminated against based on his race.  (*See* Ex. K to Pl.'s Br.).  That EEOC charge stated:

> In April 2005, I notified my supervisor that I was interested in the alteration manager's position at the Troy location. In July 2005, after my interview, I was advised that another candidate emerged.  Then I was told by human resources that the other candidate, who is White, was given the position because he was already familiar with the program.  I believe I am more qualified for the position because I have 11 years of experience with Respondent and the other candidate only has one year of experience.

(*Id.*).  Both Lofton and Lang were aware of Plaintiff's February 16, 2006 EEOC charge.

During proceedings in the EEOC, Defendant submitted a Position Statement that stated that Defendant did not hire Plaintiff for the Alterations Manager position because it hired a another candidate who was clearly more qualified.  (Ex. L to Pl.'s Br.).  Defendant's position statement makes no reference to Lofton having received a negative reference from Willis.  Lang testified that she and Lofton provided the information upon which the statement was prepared.  (Lang Dep. at 51-52).

The EEOC ultimately issued Plaintiff a "right to sue letter," but Plaintiff did not file suit against Saks with respect to the 2005 hiring decision.  Plaintiff continued working at Parisian.

On September 19, 2007, Plaintiff submitted a written application seeking a tailor position at Saks's Troy store.  (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶15; Ex. M to Pl.'s Br.).

Lofton testified that he made the decision not consider Plaintiff for a tailoring position at

Saks in 2007 because of the negative reference he had previously received from Willis. (Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶17; Lofton Dep. at 130, 148-49).

On September 26, 2007, Saks's Human Resources Department sent Plaintiff a letter stating, "At this time we do not have an opening that it is appropriate for you. However, we will keep your application on file should an opportunity arise that would be of mutual interest." (Ex. N to Pl.'s Br.).

Mohammad Helwe was hired as a tailor at Saks's Troy store on November 19, 2007. (Ex. B to Pl.'s Br. at 3). Defendant identified Helwe as white and having an unknown place of birth. (*Id*. at 2).

On April 10, 2008, Plaintiff filed another EEOC Charge of Discrimination against Saks. The Charge indicated that Plaintiff alleged race discrimination and retaliation. The Charge stated:

> I have applied for the position of Tailor with the above named employer several times. Each time that I have applied I am told that either I do not qualify based on work experience or that there is not an opening that is appropriate for me. My resume demonstrates that I have 30 years of work experience as a Tailor and also I have approximately 15 years work experience as a Manager. Some time in July again in October 2007, this employer hired two Tailors. I applied for these positions, but was not considered for either positions [sic].
>
> I can only concluded [sic] that I have been discriminated against by being denied hire/promotion due to my race, black and in retaliation for my prior participation in the EEOC process in violation.

(Ex. O to Pl.'s Br.).

During the second EEOC proceeding, Defendant submitted a Position Statement. (Ex. P to Pl.'s Br.). In discussing the factual background, the Position Statement states that "[i]n 2005, Mr. Goodwill applied for another alternations management position, but a more qualified

candidate was selected.  While the company hired the most qualified person, the Company also did not receive a positive employment reference from Donna Willis." (*Id*. at 2).  The Position Statement further stated that the Willis "reference is the primary reason that Saks did not further consider Mr. Goodwill for the open position and the reason that his subsequent applications had been rejected." (*Id*. at 3).  Attached to the Position Statement was a Statement from Lofton that states, in pertinent part:

> Several years also Mr. Goodwill applied for employment at the Troy, Michigan store.  At that time, one the Alterations managers employed by Saks, Donna Willis, had also worked for another retail operation and had supervised Mr. Goodwill in that capacity.  Ms. Willis was familiar with Mr. Goodwill's past performance.  Ms. Willis did not recommend Mr. Goodwill for employment with Saks based on her past observation of Mr. Goodwill's work in her capacity as his supervisor at her former employer, Parisian.
>
> Based on Ms. Willis unfavorable reference for Mr. Goodwill, combined with the fact that we found highly qualified candidates for the open positions, we did not offer employment to Mr. Goodwill.  When Mr. Goodwill has subsequently applied for other open positions including the ones he had now filed a charge about, *I did not consider him for those positions* because of the prior reference from Ms. Willis and the fact that I found highly skilled and qualified individuals to fill the positions.  *It was my decision along with that of the Alterations Manager to not hire Mr. Goodwill.*

(*Id*., at Ex. D) (emphasis added).

Defendant also submitted a discovery response in the EEOC proceeding that stated, in pertinent part, that:

> Mr. Goodwill reapplied on September 19, 2007 for a position in Men's Alterations; however at that time, there was no open position in the department.  On September 20, 2007, an alterations associate was terminated and *Mr. Goodwill was considered for that position*. However after conducting interviews, Mr. Mohamed Helwe was offered the tailor position as he was more qualified for the position and came highly recommended by the current manager, Mr. Hamid.

(Ex. R to Pl.'s Br.) (Emphasis added).

During his deposition in this action, Lofton testified that he did not recall discussing Plaintiff's interest in becoming a tailor at Saks in 2007 with Mr. Hamid, who was the Alterations Manager at that time. (Lofton Dep. at 103).

Willis testified that she does not recall using the words "mediocre at best" in describing Plaintiff. She testified that she may have used another word that meant the same thing but she does not recall using the word mediocre. (Willis Dep. at 113-14).

On May 5, 2010, the EEOC issued a Determination with respect to Plaintiff's 2008 EEOC Charge. (Ex. S to Pl.'s Br.). That Determination states that Plaintiff "alleges that he was discriminated, retaliated against and denied hire by [Saks] because of his race, African American, and for participating in a protected activity." (*Id.*). It states that "[t]he evidence shows there is a reasonable belief that the Respondent violated Title VII of the Civil Rights Act of 1964, as amended, with regards to [Plaintiff's] allegation." (*Id.*). The Determination does not provide any explanation as to why it found reasonable cause and it does not identify any evidence it believes supports Plaintiff's allegations.

## ANALYSIS

### I. Racial Discrimination Claims

As an initial matter, the Court must determine the proper analytical framework to apply to Plaintiff's race discrimination claims at the summary judgment stage of this case.

Allegations of discriminatory conduct "fall into one of two categories: single-motive claims, 'where an illegitimate reason motivated an employment decision,' or mixed-motive claims, 'where both legitimate and illegitimate reasons motivated the employer's decision.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 389-90 (6th Cir. 2010) (quoting *White v. Baxter*

*Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir. 2008)).

Plaintiff's Complaint does not specify whether Plaintiff asserts a single-motive claim of race discrimination, a mixed-motive claim of race discrimination, or both. At the hearing, Plaintiff's Counsel indicated that Plaintiff asserts both single-motive and mixed-motive claims.

The Court will begin its analysis with Plaintiff's single-motive claim. If Plaintiff survives summary judgment as to the analysis of a single-motive claim, there will be no need to analyze a mixed-motive claim.

**A.      Plaintiff's Single-Motive Claims Of Race Discrimination**

Plaintiff does not assert that any direct evidence supports his single-motive race discrimination claims.

Thus, his single-motive race discrimination claims are analyzed under the familiar, burden-shifting framework first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *White,* 533 F.3d at 391. Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id*. at 391-92.

**1.      Prima Facie Case**

Plaintiff's race discrimination claims against Saks are "failure to hire" claims. The Sixth Circuit "has held that, in order to state a *prima facie* case of discrimination in failure to hire, a

plaintiff is required to show that: (1) he was a member of a protected class; (2) he applied and was qualified for the position in question; (3) he was considered and denied the position; and (4) he was rejected in favor of a [non-protected] person with similar qualifications." *Pucci v. BASF Corp.*, 55 Fed. App'x 243, 245 (6th Cir. 2002) (citing *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996)).

Plaintiff's April 10, 2008 EEOC Charge and, his Complaint in this action, allege that he applied for employment as a tailor with Saks in July of 2007, and again in October of 2007.

### a. Failure To Hire Plaintiff In July Of 2007

Defendant contends that Plaintiff cannot base a failure-to-hire discrimination claim on Saks's failure to hire Plaintiff for a tailor position in July 2007 because Plaintiff cannot establish that Plaintiff submitted a formal written application to Saks in July, 2007. (*See* Def.'s Br. at 14).

Plaintiff testified that he is not sure the last time that he had formally applied in writing at Saks before July, 2007, "it may have been 2006, I'm not really sure." (Pl.'s Dep. at 33-34). He further testified that his application should have been on file at Saks in July of 2007, and that he "was in constant communication with human resources and that manager in alterations." Thus, while he did not constantly fill out written applications, he had communicated his interest in a position at Saks's Troy store quite often. (*Id.*).

Saks's standard rejection letter tells applicants that their application "will be kept on file" and includes language suggesting that they will be considered for future openings. (Ex. N to Pl.'s Br.) In addition, during Lang's deposition she was asked whether Plaintiff was considered for a position in January of 2007 and she responded that "if his application was on file it would

have been reviewed." (Lang Dep. at 68-69).

Moreover, Defendant acknowledges that its HR Department was aware that Plaintiff wished to obtain a job at Saks's Troy store. (Lang Dep. at 58). The HR Department at Parisian also advised Saks's HR Department that Plaintiff was interested in working at Saks's Troy store. (*See* Ex. J to Pl.'s Br.). Lang testified that Plaintiff had expressed his interest in a position at Saks's Troy alterations department over a long period of time. (Lang Dep. at 65-66).

Taking all of this into consideration, the Court concludes that Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether he can establish a prima facie case as to his claim based on Defendant's failure to hire him in July of 2007.

### b. Failure To Hire Plaintiff In October Of 2007

It is undisputed that on September 19, 2007, Plaintiff applied for a tailor position at Saks's Somerset Mall store in Troy, Michigan. (*See* Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15). For purposes of the pending motion only, Defendant does not contest that Plaintiff can establish a prima facie case of discrimination with respect to Defendant's failure to hire Plaintiff for the October 2007 tailor position at Saks's store in Troy. (*See* Def.'s Br. at 6).

### 2. Defendant's Legitimate, Non-Discriminatory Reason

Defendant's proffered legitimate, non-discriminatory "reason for not considering Plaintiff for a tailoring position in 2007 was because of the negative reference provided by Ms. Willis." (Def.'s Stmt. at ¶ 30). Defendant has also submitted evidence in support of that proffered reason. Lofton testified that he made the decision not consider Plaintiff for a tailoring position at Saks in September of 2007 because of the negative reference he had previously received from Willis. (Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶17; Lofton Dep. at 130, 148-49). Thus, Defendant

has met its burden of offering evidence of its proffered legitimate, nondiscriminatory reason for the challenged action.

### 3.    Pretext

Plaintiff may show pretext either directly, by persuading the trier of fact that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence.  *Wright v. Murray Guard, Inc*., 455 F.3d 702, 707 (6th Cir. 2006).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason:  1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct.  *Wexler,* 317 F.3d at 576; *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Serv*., 557 U.S. 167, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009).  The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false).  With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup."  *Id*.  The third showing consists of evidence that other employees, particularly those not in the protected class, were not subjected to the same challenged action, even though they engaged in similar conduct.  *Id.*

Where a case is at the summary judgment stage, a plaintiff seeking to prove discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's nondiscriminatory reasons for its actions are a pretext

for unlawful discrimination. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

In response to Defendant's Motion, Plaintiff starts off by mis-stating Defendant's proffered reason for not hiring Plaintiff after he submitted an application in September of 2007. Plaintiff's brief states that "Saks has suggested that it hired a more qualified candidate and offers that explanation as a legitimate, nondiscriminatory reason for its failure to hire Goodwill." (Pl.'s Br. at 9). Plaintiff's brief then attempts to show pretext by arguing that he was more qualified than the persons Defendant hired in 2007.[2] But, in this action, Defendant *does not* contend that it decided not to hire Plaintiff because the persons it hired for tailor positions in 2007 were more qualified than Plaintiff. *Defendant's proffered reason for not hiring Plaintiff was the negative reference from his former manager.* Indeed, in its Statement of Material Facts Not In Dispute, Plaintiff acknowledged that is Defendant's proffered reason for the challenged decision. (*See* Pl.'s Stmt. at ¶ 30, "Plaintiff does not dispute the fact that in connection with this lawsuit, the Defendant has claimed that the negative recommendation provided in 2005 by Donna Willis was its legitimate, non-discriminatory reason for not hiring Plaintiff"). Thus, this case is not analogous to *White*, where the defendant's proffered reason for not promoting the plaintiff was that it selected a more qualified candidate and the plaintiff could therefore establish that reason is pretexual, as having no basis in fact, by comparing the plaintiff's qualifications with the candidate selected.

---

[2]Plaintiff also seeks to introduce evidence regarding the performance of the persons hired by Defendant in 2007 after those persons had worked at Defendant (i.e, quitting without giving notice and having to be counseled regarding speaking Arabic at work, etc.). But such evidence is irrelevant to establishing pretext because post-hiring performance could not have influenced the decision to hire a person.

In a later portion of his brief, Plaintiff acknowledges Defendant's proffered reason for not hiring Plaintiff was the negative reference from Willis and asserts that he has submitted evidence to show that was not Defendant's actual motivation. (*See* Def.'s Br. at 11, stating Plaintiff has "adduced substantial evidence that Saks' proffered reason for its refusal to hire him – the unfavorable reference from Donna Willis – was not its actual motivation for that decision."). Plaintiff then asserts that he can show pretext 5 different ways.

The Court finds Plaintiff's first and fourth attempts at establishing pretext to be unpersuasive. His remaining attempts at establishing pretext, however, are more persuasive.

As his second means of establishing pretext, Plaintiff contends that "if Saks had in fact received an unfavorable reference from Donna Willis in 2005, it surely would have mentioned it in the Position Statement which it filed with the EEOC in 2006, but it did not." (Pl.'s Br. at 12). Thus, Plaintiff appears to argue that Defendant's stated reason for not hiring Plaintiff in 2007 – having received a negative reference from Willis in 2005 – is factually false. That is, the fact that Defendant did not mention this 2005 negative evaluation in Plaintiff's EEOC proceeding is circumstantial evidence that Lofton did not actually receive a negative evaluation from Willis in 2005.

As his third means of establishing pretext, Plaintiff asserts that "any unfavorable reference from Willis would be difficult to square with an earlier statement she made to Saks human relations personnel, where Willis welcomed Goodwill's interest in a full time tailor position" as well as her evaluations of Plaintiff at Parisian. (*Id.* at 12). Here, Plaintiff also appears to argue that Defendant's stated reason – having received a negative reference from Willis in 2005 – is factually false. Plaintiff directs the Court to a January 8, 2004 e-mail from

Richardson to Lang stating, "I spoke to Donna Willis. She is looking for a full time womens alterations candidate who can help do mens alterations when we get backed up. She felt that Vincent's experience is mostly Mens. *If we had a full time men's position, she would like to talk to him.*" (Ex. J to Pl.'s Br. at 6) (emphasis added). Thus, Plaintiff asserts that the fact that Willis stated, in January of 2004, that she would like to talk to Plaintiff if Saks had a full time men's tailoring position open up, is circumstantial evidence that Willis did not actually give Lofton a negative review of Plaintiff in 2005.

As his fifth means of establishing pretext, Plaintiff asserts that "Lofton admitted that he never discussed Goodwill – or the alleged unfavorable reference from Willis – with his Alterations Manager, Ali Hamid, who was also a decision-maker with respect to the tailor positions filed in 2007." On page 103 of Lofton's deposition transcript, Lofton testified that he did not recall discussing Plaintiff's interest in becoming a tailor in 2007 with Hamid. In the EEOC proceedings, however, Lofton gave a statement indicating that it was his "decision, along with that of the Alterations Manager to not hire Mr. Goodwill." (Ex. P to Pl.'s Br.). This could also be seen as circumstantial evidence that no such negative reference had been provided by Willis or that it did not actually motivate the decision.

The Court concludes that Plaintiff has established sufficient evidence of pretext to survive summary judgment on Plaintiff's race discrimination claims.

## II.     Retaliation Claim

The parties agree that Plaintiff's Title VII retaliation claim is analyzed under the same *McDonnell Douglas / Burdine* burden-shifting framework applied above. The parties also agree

that in order to establish a prima facie case of retaliation, Plaintiff must show: 1) that he engaged in protected activity; 2) Defendant knew of that protected activity; 3) that Defendant thereafter took an adverse employment action as to Plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. (Pl.'s Br. at 13-14; Def.'s Br. at 7).

It is undisputed that Plaintiff engaged in protected activity in that he filed an EEOC charge in 2006, that Defendant knew of that protected activity. In addition, Defendant took an adverse employment action in that it did not hire Plaintiff for tailor positions he sought in 2007.

Defendant contends that Plaintiff cannot establish the final element of a prima face case of retaliation – that there was a causal connection between the protected activity and the adverse employment actions.

Plaintiff first asserts that the temporal proximity between his protected activity and the adverse actions shows a causal connection. But Plaintiff filed his EEOC Charge on February 16, 2006, and the earliest adverse action did not occur until July of 2007 – one year and five months later. That kind of proximity, without more, is insufficient to establish a causal connection under existing Sixth Circuit precedent.

Plaintiff's brief contends that, in additional to temporal proximity, other evidence also establishes a causal connection.

First, Plaintiff notes that Lang and Lofton were aware of Plaintiff's EEOC charges. (*See* Pl.'s Br. at 14). Defendant's representatives being aware of the protected activity, however, is simply the second element of a prima facie case. The mere fact that they were aware of the protected activity does not establish a causal connection, the fourth element. If it did, there

would be no need for the fourth element.

Second, Plaintiff asserts that "shortly after Goodwill filed his charge in February 2006, while Saks Fifth Avenue and Parisian were still subsidiaries of Saks, Inc., Goodwill's immediate supervisor at Parisian, Mary Parashos, informed him that the management at Saks 'did not like it when you complained.'" (Pl.'s Br. at 15). Plaintiff directs the Court to page 59 of Plaintiff's deposition transcript to support this assertion.

Plaintiff's counsel mis-characterizes the testimony in several significant respects. Plaintiff's actual testimony regarding the conversation with Mary Parashos is as follows:

A.  Well, I was speaking with my manager, the manager of alteration who took over for Donna Willis. Her name is Mary Parashos.
. . . .
A.  An she made a comment that – she was speaking up in reference to management, that they did not like it when you complained.
Q.  When was it that she made this comment to you?
A.  *This was in 2006.*
Q.  Was this before you filed your charge of discrimination with the EEOC that she made –
A.  *It was after.*
Q.  You filed the charge in February 2006. This conversation with Ms. Parashos would have taken place in the late winter or spring of 2006?
A   I don't remember the exact time but I do remember that it was after – I don't remember the season but I remember her clearly stating that.
Q.  Do you remember clearly that it was in 2006 that she said this to you?
A.  I believe it was *sometime in 2006.*
. . . .
Q.  Did she express – in this conversation you had with her, did she express to you who they were when she made the comment they do not like it when you complain?
A.  I knew she was referring to management but she did not mention anyone in particular.
Q.  The you was a generic you. Wasn't you Vincent Goodwill, it was you generically?
A.  Yes.
Q.  You understand what I'm saying?
A.  Yes.
Q.  In other words, more like they do not like it when employees complain but

18

|      | it was expressed to you as the word you, correct? |
| ---- | --- |
| A.   | Yes. |
| . . . . | |
| Q.   | What were the exact words as best you remember it that Ms. Parashos said to you in 2006 in the conversation you had when she talked with you? |
| A.   | That was a few years ago, I don't remember the exact words but I do remember her stating that they don't like it when – I believe it was when you complain, you or people – I believe it was you, this was a few years ago but I certainly understood, you know. |
| Q.   | When did you – a minute ago, quite literally about 90 seconds ago, you understood the you was meant generically to refer to employees.  Is that accurate, that the statement she made to you was, to your understanding, generically about employees complaining or was it specifically about you Mr. Goodwill complaining? |
| A.   | I took it was it was about me because I had filed a complaint. |

(Pl.'s Dep. at 59-63) (emphasis added).

Thus, Plaintiff testified that the comment was made sometime in 2006, after he had filed his February 16, 2006 EEOC Charge.  Plaintiff did not testify that the comment was made before March 6, 2006 – the date that Saks, Inc., Defendant's parent company, sold Parisian.  Plaintiff testified that both he and Parashos were employed by and working at Parisian – not Saks – when this conversation occurred.  (Pl.'s Dep. at 63).  Moreover, contrary to Plaintiff's assertions in his brief that Parashos "informed him that the management *at Saks* 'did not like it when you complained.'" (Pl.'s Br. at 15) (emphasis added), Parashos alleged comment to Plaintiff made no reference to Saks.

Accordingly, taking Plaintiff's deposition testimony as true, Plaintiff actually testified that: 1) sometime after Plaintiff filed his EEOC Charge against Saks; 2) while Plaintiff was working at Parisian – not Saks; and 3) his Parisian supervisor made a comment that management doesn't like it when you or people complain.  The alleged comment was not made by a Saks representative and made no reference to Saks.

Third, Plaintiff asserts that "Goodwill was referred to as a "rebellious" type of person in an email exchange between representatives of Saks and representatives of Parisian. (Pl.'s Br. at 15) (citing Ex. J to Pl.'s Br). Plaintiff does not explain how he believes this e-mail establishes a causal connection between Plaintiff's protected activity in 2006 and Defendant's decision not to hire Plaintiff in 2007.

The Court fails to see how the e-mail at issue could establish a causal connection. The e-mail Plaintiff refers to is a July 12, 2003 e-mail from Susan Richardson, who worked in Human Resources at Parisian. The e-mail states, in pertinent part, that "Donna and I (and I think, Bill, as well), all feel that Vincent has made improvements in his communication skills, but occasionally is still a 'rebellious' type of person." (Ex. J at 5). Notably, this e-mail was drafted in 2003 – *before* Plaintiff had ever filed an EEOC charge. Thus, the 2003 comment does not establish a causal connection between Plaintiff's 2006 EEOC Charges and Defendant's failure to hire Plaintiff for a tailor position after he applied in September of 2007.

Fourth, Plaintiff directs the Court to the Determination issued by the EEOC on May 5, 2010. (Ex. S to Pl.'s Br.). That Determination states that Plaintiff "alleges that he was discriminated, retaliated against and denied hire by [Saks] because of his race, African American, and for participating in a protected activity." (*Id.*). It states that "[t]he evidence shows there is a reasonable belief that the Respondent violated Title VII of the Civil Rights Act of 1964, as amended, with regards to [Plaintiff's] allegation." (*Id.*). The Determination does not provide any explanation as to why it found reasonable cause and it does not identify any evidence it believes supports Plaintiff's allegation.

The Court agrees with Defendant that the EEOC's Determination should not be

considered with respect to the pending motion for summary judgment. *See, e.g., Alexander v. Caresource*, 576 F.3d 551 (6th Cir. 2009).

Considering all of the above, the Court concludes that Plaintiff has not submitted sufficient evidence of a causal connection to survive summary judgment. The Court shall therefore grant summary judgment in favor of Defendant as to Plaintiff's retaliation claim.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. IT IS ORDERED that the motion is GRANTED with respect to Plaintiff's retaliation claim and Plaintiff's retaliation claim is therefore DISMISSED. The motion is DENIED in all other respects.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 3, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 3, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager